Good afternoon, your honors. It pleases the court, Thomas Lappin on behalf of the petitioner Alexander Diaz Martinez. I would like to reserve three minutes for rebuttal if that is okay with the court. In this case, this is an appeal or a petition for review from a Board of Immigration Appeals and Immigration Judge decision in a case where the petitioner, Mr. Diaz, is charged with alien smuggling under the Act, under Immigration and Nationality Act, Section 212A6EI. This is a case, your honor, that we ask that the court grant the petition for review, find that the immigration judge and the BIA committed legal error, and remand with instructions to grant the motion to terminate. Counsel, my question is the following. It seems to me that the BIA's decision and the IJ's decision are potentially ambiguous, but they seem to be relying on the fact that they don't find your client to be credible. That is, that they don't believe that he really was ignorant of Zarate's attempt to come into the country illegally and that they were sort of in cahoots. Is that a fair reading of the decision? And if so, is that lack of credibility or adverse finding supported by substantial evidence? Well, I would submit this, your honor. I think that the adverse credibility finding is a bit of a red herring in the sense that the immigration judge originally found that he was not a credible witness because he found that because they were friends, they had worked together, that they had their wives socialized, that he should have known more about his immigration status. He also talked about the fact that the respondent, and again, there's a question of what present means, but the respondent was at the port of entry at the time. Right. We're familiar with the facts. I guess the question is whether the agency made alternative holdings. That is, he's not believable in denying that he was part of this attempt to smuggle, and therefore he loses. And in the alternative, even if he's believable, he loses. And I'm wondering if that is a fair way to read the decision. I think it is a fair way, and I think, again, that's a problem, as the court points out. It's a problem because the IJ, after making the credibility finding, discussing the facts, made a legal conclusion that the act of translating the words spoken by Mr. Sarate to the officer in response to the officer's questions and the act of translating back from the officer to Mr. Sarate. That's the second reason. That's why I asked you if it was fair. Because if they thought that your client was lying and that he was actually in on the whole thing from the beginning to help his friend, not just translate, but to help him, then doesn't that mean that we would have to uphold the decision? No, I think it's not clear. I think that if that's the case, if the court feels that that's the case, I think it would have to be remanded for clarification. Because the problem is the IJ, the Board of Immigration Appeals in their decision, I believe it was a 2008 decision, simply said. Which one? There were two in 2008. The 2008 original BIA decision dismissing. Yes, Your Honor, March 14th, 2008, at 170 of the certified administrative record, which I'll refer to as the CAR after this. In that one, they said that they didn't find that the credibility finding was necessary because the question was whether or not he engaged in alien smuggling. And they focused then on the question of the law. If you look at the immigration judge's decision from December 10th, 2007, at 210 of the CAR, he just reaffirms his original decision from 2007, which found that the affirmative act was the act of translation and the driving of the vehicle. So at that point, when the BIA makes its final decision in 2012, they again incorporate by reference, if you look at page 3 of their decision, they incorporate by reference their previous decisions. And I think at that point, again, it comes down to being a legal issue. And as the court knows, substantial evidence is the standard if it's a factual finding. But if it's a legal question, this court has de novo, reviews it de novo. And I believe that is Langenden v. Mukasey that speaks to that. And much like the case of Aguilar. So what are you saying is the legal? The legal issue is that the judge made not a factual finding. He didn't have to find a fact that the respondent translated. There's no contest to that. He was translating. He didn't have to find the fact that the petitioner, Mr. Diaz, was driving a vehicle. He admitted to that. That's clear. So when the judge made a decision using that as the affirmative act, that was a legal conclusion, not a finding of fact. So it's not substantial evidence. It's de novo. That's the whole reason I asked you the question I asked you, because if it's a completely alternative ground and the adverse credibility is sufficient to allow denial of relief, then we wouldn't have to reach the legal issue. I understand what the court's asking. And I wish I had a better answer. All I can say is I don't believe, number one, that the Board of Immigration Appeals, I think, discarded the credibility finding in a sense that said it was not an issue, that they didn't think it was necessary. And I would agree with them. I think this is a case where the court here doesn't need to reach that issue. Well, let me just pose the following. Let's assume for the sake of this question that we agree with you that if he is credible, either it's not sufficient to support removability or it's questionable, but we also know that the BIA found your client not credible. So why wouldn't we remand it for them to determine what effect that credibility finding has? Well, I think that would be one option, would be remand it for that purpose. I think the other option would be to say it doesn't matter whether or not he was credible, because the immigration judge who made the decision here made a legal conclusion that what he did, only what he did. Except if they're independent. I mean, the problem is that if he's not believable and what they conclude is that he was in on the whole thing, not just translating, that it was a plot between the two of them, then that surely would suffice as a legal matter. And I think at that point you'd be correct that it would need to be remanded for clarification as to whether or not to refine the credibility finding. So is it possible for your clients, Mr. Diaz's statement, that happened at the secondary inspection before removal proceedings were initiated, about something that was really not core to the alien, or it seems like it may not be core to the alien smuggling, that he admitted that he didn't tell the truth to the Border Patrol inspectors about what they had done the night before the purpose for the trip. Is that right? Yes, he admitted that they were not at a party. He actually drove from Los Angeles to pick him up. And so I guess, because it's not clear, I mean the adverse credibility determination is very confusing. I mean, they referred to it in the asylum proceedings. This wasn't asylum proceedings we're looking at now. They're looking at it in the removal. I'm not quite sure what effect an adverse credibility determination has and whether or not that statement enough to support aiding and abandoning aliens. And I would agree with the Court that that would need some clarification from the agency, from the Board. Obviously, my argument is that it doesn't need to be reached because the legal conclusion can be reached by this Court, and under Aguilar he would not be a smuggler. But I do understand what the Court says. If I could reserve my last minute for rebuttal. You may, absolutely. Thank you. And we will hear from the Court. May it please the Court. Jonathan Robbins here on behalf of the Attorney General. Good afternoon. To clarify the issue of what's going on with the credibility finding in this case, I think I agree that the immigration judge's decision is a little bit confusing. Certainly the immigration judge in proceedings below did make an adverse credibility finding on the basis that Petitioner had admitted to fabricating a story once he was referred to, after secondary inspection, to the interview with the border officer. What's the significance of that? If that's all we have, let's just assume for a minute that that's all we're looking at. Well, that would be sufficient to uphold the agency's decision because the board did uphold the credibility finding. But they didn't make anything of it. That's my problem. It's very confusing. They say they absolutely uphold the adverse credibility finding, but they don't reason from that to a conclusion. What they do is say the adverse, I'm paraphrasing, the adverse credibility finding is not clearly erroneous, but it doesn't matter to us because we're going to go on and find removability regardless. And so I guess what I'm concerned about is, you know, we can't supply reasons for the agency that they didn't give us under SEC versus Chenery principles. So why wouldn't we have to send it back to say, okay, well, why does this, well, assuming that we don't agree with you on the alternative, is this sufficient? Why does this matter, this adverse finding? Well, I think there's a number of things that could put your mind at ease. Although the immigration judge in his decision didn't articulate that he was making an alternative finding, he does make the credibility finding, but then goes on to sort of basically treat petitioner's statements as true on the next base. I understand that, but the premise of my question is I'm looking at the BIA, not the IJ. It's the BIA that matters. And it's the March, I believe it's March of 2008 decision where they say he's not credible, but that's not essential for us because we're going to go off on a different ground. So if we don't agree with the alternative ground, why wouldn't we have to send it back to say, well, what is this dispositive that you don't believe him? Well, I think the alternative ground is something that the immigration judge did find in his decision. Although the – We're reviewing the BIA, not the IJ. Right. And I think the board's decision here to focus more on the alternative ground of whether what petitioner said was true was something that the judge did. They both have credibility findings. They both have the alternative finding. And I would also point out that – We're having trouble communicating with each other because the premise of my question is that we don't agree with the alternative ground. Oh, I see. I'm sorry. I didn't understand. So that if he's credible, what he did wasn't enough. But if he's a liar and he was in on it from the beginning, that would be enough, but that isn't what the BIA actually said. That's my problem. So you don't agree that they upheld the – Well, I'm just asking you the question. I want you to assume that we don't agree with your alternative reading. Okay. And that the credibility is the only case at issue. What do we do about the credibility? Correct. Well, then I would say, well, the board's decision with respect to the credibility finding is certainly short. They only just say that it's not clearly erroneous. But the case also went back down to the immigration judge and back to the board for a second time around. And petitioner did not challenge the credibility finding to the – I understand that. Yes. He's not credible, but so what? What does that mean? They didn't ever analyze where that takes them as a legal matter. If he's not believable, then what? And I don't read either – any of their decisions as really explaining that. Well, you're saying they didn't make the jump between the credibility? Correct. And we can't do that as I understand our limitations. Well, I would argue that even if they didn't make the jump, there are certain exceptions. So I think you're sort of implicating that maybe there's a Chenery problem. One of the exceptions to Chenery is if you can reasonably discern the agency's path based on what they were doing. Maybe they could have been more articulate in their decision. If we have to reasonably determine the path, I don't think that's a great strategy on your part because it's really confusing. There's a lot of disconnects here with respect to adverse credibility determination in the context of this whole removal proceeding. And then later somebody makes reference to the asylum. But I'm just wondering, haven't you basically conceded Mr. Diaz-Martinez's argument that the adverse credibility determination is not supported by substantial evidence and can't by itself supply the basis for aiding and abetting the smuggling charge here? I mean, there's a reference at least once, if not twice, that the IJ or the BIA were not relying on that for the basis of their decision. Well, the adverse credibility, to me, what they were saying with respect to that issue is that, you know, his defense to the aiding and abetting argument was that he didn't have any awareness or didn't have any knowledge of the smuggling. And they were basically discrediting that, saying we don't believe that. And to me, that I mean. But then they say we're not going to use that as a basis. I don't. Respectfully, Your Honor, the language of the board's decision doesn't say they're not going to use it. I admit it's a little bit cursory, but they focus more on the ultimate finding. They say this finding is not essential to the finding of removability. Now, that is ambiguous, at least, because not essential could mean, well, we thought about it, but it isn't the main thing or it could mean we're ignoring it. And that's what seems unclear to me. It makes it sound like it was unnecessary. And here we're looking at that would be vital at this point to keep this going. But as I read your brief, you didn't address the adverse credibility determination issue. Well, that's because they didn't really address it in their opening brief. We were responding to the argument that the story as taken as true was sufficient on its own to establish evidence of removability. Because their brief focuses makes a lot of hay about evidence that they wanted to suppress, specifically the I-213, the G-166, the record of sworn statement. And so our brief is making the point, countering their argument, which was that the evidence of removability is outside of that evidence. Diaz-Martinez specifically argued in his brief that the fact that petitioner planned on concocting a story as to his motivation for traveling to the United States with sorority does not supply the missing elements of knowledge and active participation by the petitioner. You never responded to that. And so I'm wondering if you haven't waived your ability. Well, I guess it could be argued that we waived it. But if the court were to determine that that were the case, I think the board's decision also discusses the alternative ground, which is not based on credibility, which is crediting the assertions that he made. I think the immigration judge did that. I think the board did that in its decision. Tell me what you're talking about, crediting the assertions. What assertions when? Well, specifically, he specifically testified during his testimony that he knew Mr. Zarate was not a U.S. citizen. He knew Mr. Zarate's visa had been canceled from the incident two weeks earlier where he had been at the border involved in another incident where he tried to get the couple's baby across. He also admitted he handed over the California identification over to the immigration officer, the border patrol officer, rather. And then he also admitted that he told the border officer that he relayed his friend's false statement that he had been born in the United States when he knew that he was actually born in Mexico. You say relay. Is that the statement that may or may not have been a quote translation, or is it something else? A petitioner admitted that he knew.  The question with respect to that, as I understand it, is he knew it was false, but he was acting as a translator. And that's what he says. He says they were asking questions, and they didn't understand each other, and I was essentially translating. Now, is that a reasonable reading of what happened? And if it is, is there any other statement that he made that was false or misleading? It's not a reasonable reading based on this testimony because he goes on to testify that after that translation when he was referred to. I'm saying that's the translation. After the translation, what? Right. After the translation, he admitted that when they went and were referred to the interview process, that he continued the false story and concocted a false story with his friend to tell the immigration officers. So the notion that it was just sort of he was just acting as – He did say he continued the false statement from my reading, but tell me – No, he admitted it. It's on page two. No, but he admitted that he gave the wrong false statement regarding what they – the reason for their trip or the reason why they had gone to the – they had gone to a party the night before because he was scared. He did, but here's the thing. He also said that he thought that Mr. Zarate had gotten his papers back. Right, but, okay, but here's the thing. He – after he testifies that he translated the issue of his friend's birth of the United States to Mexico, at that point he knows that he's transmitting false information because he admits that he knows that his friend was born in Mexico. So if you were going to say, well, he was just acting as a conduit and didn't realize it right away, it's significant that the next step that he takes is rather than coming clean and removing himself from the fraud – No, but that's not an affirmative act. I mean, I don't know why – I mean, it seems like that's more acquiescence than anything else, and we have case law that talks about the significance of that. Well, respectfully, Your Honor, specifically translating information that you know to be false I would say is an affirmative act. Well, how do you – That's not acquiescence. How do you distinguish that from Arguilar-Gonzalez and Alto Morano? Well, very easily. The alien in Alto Morano was just physically present. There was certainly no affirmative act, although I would take issue with the respect to whether presence could sometimes be an affirmative act as well. But putting that aside, and the same thing in Arguilar-Gonzalez. She was just present, and they determined that there was no actual affirmative act. Here, there's the driving of the car. He was the driver of the car, not just a passenger, as those aliens were in those cases. And he actively transmitted information that he knew to be false to the Border Patrol officer. And then he continued that when they concocted a false story to tell in the interview process about what his reasons were for going down back to Tijuana to pick up his bag. When he said that the immigrant was from a hospital in East Los Angeles, I mean born, I guess, in a hospital in East Los Angeles, was that part of the translation, or what he claims is a translation? Was he saying that's what he just said to you, or did he add that himself as though it was of his own knowledge? Well, I agree with you, Your Honor. It could go either way, but what the fact finder determined in this case was that that was an affirmative act and that he did know, especially in light of the fact that he concocted a story directly afterwards instead of coming clean and removing himself. Which proves that when he purported to be translating, he was not. I don't understand the link between those two. Okay. Maybe I'm not explaining it right. Okay. There's two possible outcomes. It could be either just a translation, or he could have known the problem with his pronunciation. When you say that, you're talking about that one sentence or sentence and a half in which he purports to translate. He says he was just translating. Yes. That's all we're talking about. Correct. Okay. Thank you, counsel. You've exceeded your time, and I think we understand your position. Thank you for your time, Your Honor. Mr. Lappin, you have a minute and some for rebuttal. Your Honor. Wait until you get to that. Sorry. Your Honor, I'd simply very quickly, I would say that at page 36 of the CAR, the issue about credibility was argued and raised on the BIA appeal, and then at page 27 through 29 of my opening brief, I did address the credibility issue. Let me ask you the following. In addition to the translation, which is, you know, it's sunny out, it's sunny out, he's translating, he also hands over the identification papers. Does that make any difference? That's an act beyond merely translating. Well, Your Honor, Mr. Diaz is in the driver's seat of the car. Mr. Cerate is in the passenger's seat. The officer is at the window of the driver. Mr. Diaz passes his documents to the window, and then the documents are passed by, again, like a conduit. Well, I guess what I'm asking is whether there's any difference between translating spoken words and transmitting documents that are known to be false. I think the difference here is that Mr. Diaz did not provide the document in question. It wasn't like he provided a false I-551 or a false identification card. I know he didn't. I'm asking you whether there's an analytical distinction between passing along false documents and passing along false testimony or false statements. I think there is not because of the fact that he didn't provide the document originally, much like in Aguilar. So it's okay if somebody gives me a false passport for me, and I hand it to them as I'm coming in the country, and I say, well, gee, I didn't do this. It was given to me. That's the defense? Well, but in this case, again, this was a transaction that took place very quickly. This was just Mr. Diaz didn't have the document in possession. It isn't just that somebody else made the false. It's the circumstances under which it was made, not just that someone else forged the paper. Well, he had a California – I believe it was a valid California driver's license because he had lived here. I thought we were talking about use of false papers. No, no. He was just simply trying to pass himself off as being a U.S. citizen because he didn't have any paper. But he had a California ID that I believe was validly obtained because he had lived here. Mr. Zarate had lived in this country for many years by using his DS-150 to cross back and forth. If the document was not forged, then what are we talking about? We're talking about the claim that he was born on U.S. soil, making him a U.S. citizen at birth. So him saying I was born at – I know, but weren't you just talking about passing a document and what its impact was? No, I was simply answering the question that was posed to me. Right, and I understood your answer to me that it wasn't a false document. It just didn't prove anything because it was only an ID. It was a California ID. And again, because, again, my client didn't bring the ID, even if it was a real ID, he didn't bring it to the incident. He simply, again, this was not – he didn't have it in his possession for a long period of time. It passed right through him like water through a pipe, like the Spanish words passed through him and became English on the other side. And if the officer – just very quickly, two things. If the officer had not wanted him to translate, he could have said, stop, sir, let your friend answer. And secondly, I think that, again, on a legal issue – Whose idea was it for him to translate? I think it was spontaneous. The respondent was speaking – or Mr. Zarate was speaking Spanish and the officer was not speaking Spanish. He was speaking English. And as many bilingual people do, Mr. Diaz just started translating. Thank you, counsel. Thank you. The case just argued is submitted and we appreciate the arguments of both counsel.
judges: Sack, Graber, Murguia